27591. POLLARD, receiver, *v.* BALON *et al.*

DECIDED DECEMBER 5, 1939. REHEARING DENIED DECEMBER 16, 1939.

*Powell, Goldstein, Frazer & Murphy,* for plaintiff in error.

*George & John L. Westmoreland, Neely, Marshall & Greene,* contra.

STEPHENS, P. J. S. J. Balon brought suit against H. D. Pollard as receiver of Central of Georgia Railway Company, alleging that the plaintiff was employed as a structural steel worker by Karl Koch Erecting Company, and was earning $72 per week; that on May 13, 1936, the defendant was in charge of and supervising and directing the unloading of several freight cars loaded with steel girders for delivery to the plaintiff's employer, and that the defendant had a crane on a flat car on one of its tracks adjacent to the track on which the freight cars loaded with girders were located; that the unloading of the cars was in charge of one of the defendant's employees who was the engineer of the crane; that the employer of the plaintiff supplied all labor necessary in unloading the girders except the engineer in charge of the operation of the crane and the fireman on the crane, the engineer and fireman being employees of the defendant; that neither the plaintiff nor his employer had any control over the operation of the crane, or the manner in which the girders should be removed, or the amount of the load which should be taken by the crane, and that the plaintiff did not know the loading capacity of the crane, but these matters should have been within the knowledge of the defendant; that the

plaintiff was instructed by the agent of the defendant in charge of operating the crane to hook the crane to two steel girders, and did so; that the engineer in charge of the crane began to lift the girders, and when the girders had been raised to a height of about six feet above the sides of the freight car in which they were loaded the boom on the crane suddenly buckled and bent and the girders and boom fell, striking the plaintiff, knocking him from the freight car onto another track of the defendant and severely and permanently injuring him; that the boom on the crane which was furnished and operated by the defendant was defective and unsafe for the work it was intended to perform, in that the boom had a bend or buckle in it which rendered it incapable of supporting the load it otherwise would support, and made the use of the crane hazardous to those working about it; that before the accident the defendant had been notified by the plaintiff's employer that the boom was defective and unsafe for use, and the defendant refused to place a new boom on the crane before it was put into operation; that the plaintiff had no knowledge of the defect in the boom and was not warned of it by the defendant; that the plaintiff received various injuries and incurred various expenses for their treatment; that the defendant was negligent in operating the crane with the defective boom and in attempting to lift the load of approximately 17,000 pounds with a boom that was bent and defective.

The defendant filed an answer in which it admitted, in answering paragraph 8 of the petition, that the employer of the plaintiff supplied all labor necessary in unloading the steel girders, and denied the other allegations of the paragraph. Further answering the defendant alleged that it was agreed between the erecting company, the employer of the plaintiff, and the defendant, that the defendant would rent a crane with crane operator and fuel to the erecting company for $10 per day for daily use in unloading ton loads of steel and equipment belonging to the erecting company; that in accordance with this agreement the defendant turned over to the erecting company its crane with operator and fuel to be used by the erecting company who began using the crane in unloading its steel on May 13, 1936; that at all times referred to in the petition the crane and operator were under the direction and exclusive control of one Karl Koch, an agent of the erecting company, and the operator of the crane exercised no control or made

no movement except upon direction and instruction of Karl Koch; that if the plaintiff was injured it was by his own failure to exercise ordinary care for his own safety in working for his employer, and was not the result of any negligence of the defendant, he being injured by falling to the ground from the car in which he was working while attempting to climb over the side of the car when the boom pole broke as a result of the operation of the crane upon the order and under the direction of Karl Koch.

The plaintiff amended the petition by striking certain paragraphs (including paragraph 8) and adding other paragraphs in which he alleged that his employer notified the defendant that he would need a crane capable of moving steel that would weigh up to 25 tons, and contracted with the defendant to furnish a 25-ton capacity crane, and the defendant failed to furnish such crane, but furnished one that was not capable of handling 25 tons; that it was defective and unsuitable for the purpose for which it was rented in that it was placed on a flat car instead of on a car with low trucks built specially for handling cranes, and in that it was not equipped with outriggers, and did not have any grabs or holds to be fastened to the rails to keep the crane from tilting or tipping; that these facts were unknown to the plaintiff although known to the defendant; and that the defendant was negligent in failing to furnish the plaintiff's employer a crane capable of handling 25 tons, in failing to furnish a crane on a specially built car that was heavy enough to hold the crane on the tracks and keep it from tilting, in failing to furnish a crane that was equipped with outriggers of sufficient weight to enable the crane to successfully move 25 tons, in furnishing a crane that was not equipped with grabs or hooks to be fastened to the rails, in failing to warn the plaintiff of the defective condition and character of the crane furnished by the defendant, and in that the operator of the crane moved the crane with a load on it in a negligent manner, in that he swung the boom of the crane to the right with such speed that it caused the crane to dip or tilt, and then to stop the boom, suddenly causing the boom to break at the point where it was defective.

It was further alleged in the plaintiff's second amendment that his employer contracted with the defendant to furnish to him, together with the crane and operator, a fireman and fuel for which the plaintiff's employer agreed to pay the defendant $10 per day;

that the plaintiff was instructed by his employer to assist in unloading the steel from the cars by fastening grappling hooks to the steel; that it was necessary for the operator of the crane to lift the steel out of the cars and put it on trucks which were furnished for that purpose; that the plaintiff did not have anything to do with the operation of the crane and had no control over the manner in which the operator of the crane handled it; that the plaintiff assisted in fastening the spreaders on two steel columns weighing approximately 7 or 8 tons, and the operator of the crane lifted the columns and attempted to move them to the left of the freight car, and after several attempts the operator was unable to get the columns by the base of the crane, and swung them back to the right in order to put them on a truck to the right of the freight car; that after the operator of the crane lifted the columns from the car they were closely visible to him, and he held the columns suspended for several minutes after attempting to unload them on the left, and swung the crane and columns to the right so rapidly that he caused the crane to tip or tilt, and then suddenly attempted to stop the movement of the crane and columns, jerking the same in such a way that the boom of the crane suddenly buckled and bent where it had been previously bent, and the columns and boom fell striking the freight car with great violence and knocking the plaintiff from the freight car onto the rails of another track of the defendant, severely and permanently injuring him.

American Mutual Liability Insurance Company filed an intervention alleging that it was the insurance carrier for Koch Erecting Company, under the provisions of the Georgia workmen's compensation act; that the plaintiff was being employed by the erecting company at the time of his injury; that the injuries received by the plaintiff resulted from an accident arising out of and in the course of his employment with the erecting company, and that the intervenor was required to pay the plaintiff compensation and provide medical expenses required by the compensation act; that it had paid the plaintiff compensation to the amount of $495 and had been compelled to spend $175.85 as medical expenses; that the intervenor was advised by its medical examiner that the plaintiff had a body disability of 30 per cent. which the intervenor agreed to pay, but the plaintiff refused to accept; that under the workmen's compensation act the intervenor is entitled to recover out of

any judgment which the plaintiff may secure against the defendant the amount of compensation and the medical expenses which it has been compelled to pay to the plaintiff. The insurance company prayed that it be allowed to file the intervention and be held entitled to recover out of any verdict and judgment rendered in favor of the plaintiff the sums which it had been so required to pay. This intervention was allowed without objection from either party. The jury found a verdict for the plaintiff in the sum of $13,750. The defendant moved for a new trial on the general grounds, and on several special grounds. The motion for new trial was overruled, and the defendant excepted.

■ Complaint is made of an instruction to the jury in regard to the intervention of the insurance company on the ground among others that the instruction was irrelevant and misleading and submitted to the jury for their determination a fact about which there was no dispute. The defendant asked for no instruction as to this intervention, and did not move to exclude the consideration of it from the jury. Consequently it can not be held to be error for the court to explain to the jury the intervention which was a part of the pleadings. It would seem that the instruction would be more harmful to the plaintiff than to the defendant, if the jury were misled thereby. However this may be, this charge of the court was not error for any reason assigned by the defendant. It will be noted that the jury did not mention the insurance company in its verdict, but the judgment of the court provides for the reimbursement of the insurance company.

■ It is complained that the court erred in charging the jury as follows: "I also charge you, in this connection, that if you find that the plaintiff was confronted by a sudden or dangerous situation or emergency or other circumstances likely to impair his judgment or discretion at or about the time it is alleged that the iron beam fell, he would not be held, as a matter of law, to be lacking in ordinary care. Whether such person, in such an emergency as contended here, in order to avoid being struck, is guilty of contributory negligence so as to defeat his action for damages, is a question of fact for the jury to determine in cases like this." This instruction left it to the jury to find whether there was in fact a dangerous emergency, and whether the plaintiff in the emergency was guilty of contributory negligence so as to defeat his action for

damages. The plaintiff had testified that when the operator had started to swing over to land the steel on the truck he noticed that it was coming down a little too fast, and saw that the load and the boom were coming down, so he started to run toward what he thought was a safe place, and the last thing he knew he got hit on the head and lost consciousness. The plaintiff further testified: "If I had stayed in the exact position where I was at I think the boom would have hit me squarely and I believe it would have killed me; so I started to run where I thought it was a safe place. . . I saw that the load itself was coming down too fast, and I swung around and saw that the load had gotten away from the engineer. I knew that the crane had gotten out of control of the engineer and it was going to wreck, so I started to run." There was no error in the court submitting to the jury the question of fact whether the plaintiff acted in an emergency and whether or not he was wanting in ordinary care.

■ Several instructions of the court on the subject of comparative negligence are complained of as inconsistent and confusing and misleading to the jury. In the first of these instructions the court stated: "If the complainant and agent of the company are both at fault the plaintiff may recover, but the damages shall be diminished by the jury in proportion to the amount of default attributable to each." The court further charged that if the jury believed that the plaintiff was guilty of some negligence and that his negligence was not so great as that of the defendant "if you believe the defendant was negligent, and if you further believe that by the exercise of ordinary care the plaintiff could not have avoided the consequences of the defendant's negligence . . this negligence on the part of the plaintiff would not prevent a recovery of damages, but would authorize a reduced recovery of damages in favor of the plaintiff," and the verdict "should reduce the amount which would otherwise be awarded in proportion to the amount of default attributable to the plaintiff." The court further charged: "If you believe the plantiff was guilty of some negligence but less negligent than the defendant, that is, if you believe the defendant was negligent, and that the plaintiff could not, by the exercise of ordinary care, have avoided the consequences of the defendant's negligence, that then the amount should be reduced down to such an amount as would be proportionate to the amount of default attributable to

the plaintiff." There was no inconsistency in these instructions, nor were they calculated to confuse or mislead the jury. The statement in one of them that "the damages shall be diminished by the jury in proportion to the amount of default attributable to each" is not incorrect in that their proportion involves two factors—the negligence of each party. It would be impossible to compare the negligence of the plaintiff to the negligence of the defendant without considering the negligence of each.

■ It is complained that the court in charging upon the answer filed by the defendant said: "In answer to some of the paragraphs in the plaintiff's original petition the defendant answered by explaining these allegations. Such allegations in the plaintiff's petition have been stricken; that is allegations numbered from 6 to 12 inclusive." It is contended that this was error in that the court, in purporting to state all of the defendant's pleadings, omitted to state a vital issue which had been raised by the answer in the following language: "Answering paragraph 8 the defendant admits that the employer of plaintiff supplied all labor necessary in unloading the steel girder. The remaining allegations in said paragraph are denied." It is further contended that the charge withdrew from the consideration of the jury the further answer of the defendant in so far as it was explanatory of the allegations of the petition. Certainly the instruction complained of did not expressly withdraw any part of the answer. But if it be conceded that the instruction by implication excluded the consideration of the special answer to the stricken paragraphs of the petition, it does not appear that this worked any injury or injustice to the defendant. Paragraph 8 of the petition alleged that the plaintiff's employer supplied all labor necessary in unloading the girders except the engineer in charge of the operation of the crane and the fireman on the crane who were employees of the defendant. There was no dispute in the evidence that beyond the engineer and fireman of the crane the labor used in unloading the steel was furnished by the plaintiff's employer. If the defendant desired to use the stricken allegation as an admission then it was incumbent on it to introduce the stricken paragraph 8 in evidence. This was not done.

■ The evidence was conflicting. There was sufficient evidence to authorize the jury to find for the plaintiff. No error of law appears and the trial court has approved the verdict.

414

*Judgment affirmed. Sutton, J., concurs. Felton, J., dissents from the judgment because of the rulings in divisions three and five of the opinion.*